UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK ANTHONY PORTER,

        Petitioner,                      Case No. 15-cv-12538

v.                                        HONORABLE AVERN COHN

JEFFREY WOODS,

        Respondent.
_____/

## MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner, Mark Anthony Porter, through counsel, challenges his jury convictions for two counts of first-degree murder, conspiracy to commit murder, first-degree home invasion, larceny in a building, possession of a firearm by a felon, and possession of a firearm during the commission of a felony. Respondent, through the Attorney General's Office, contends that Petitioner's claims are defaulted or lack merit. For the reasons that follow, the petition will be denied.

### II. Background

### A.

Petitioner's convictions arise from an October 28, 2006 shooting, which resulted in the death of David Gibson. A co-defendant, Jo Ann Caldwell, testified at Petitioner's trial that she and Petitioner went to Gibson's trailer park to kill him, and that Petitioner shot Gibson while she was in her car. Petitioner testified that he was intoxicated in Caldwell's car while Caldwell shot Gibson.

As will be explained, the trial court required that Petitioner wear shackles during the trial, but took steps to ensure that the jury did not see the restraints. However, as will also be explained, two years after the trial, on April 13, 2012, the trial court held an evidentiary hearing on Petitioner's ineffective assistance of counsel claim, at which a juror testified that he had seen Petitioner's shackles.

Petitioner was sentenced as follows: concurrent terms of life imprisonment for each of the premeditated murder and conspiracy to commit murder convictions; 160 months to 20 years for the first-degree home invasion conviction; 32 months to 4 years for the larceny in a building conviction; and 40 months to 5 years for the possession of a firearm by a felon conviction. All sentences were to be served consecutive to a 2-year term for the felony firearm conviction.

Petitioner timely filed an appeal of right in the Michigan Court of Appeals, arguing that he was entitled to a new trial because (i) he was shackled during trial; (ii) the prosecution violated the rule announced in Brady v. Maryland, 373 U .S. 83 (1963); (iii) his trial counsel was ineffective; and (iv) the evidence produced at trial was insufficient to support his convictions. The Michigan Court of Appeals affirmed the conviction. People v. Porter, No. 298474, 2012 WL 5233606 (Mich. Ct. App. Oct. 23, 2012).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims as in the Michigan Court of Appeals. In lieu of granting leave to appeal, the Michigan Supreme Court remanded the issue of whether Petitioner was denied effective assistance of counsel to the court of appeals. People v. Porter, 493 Mich. 972 (2013).

On remand, the Michigan Court of Appeals again affirmed the conviction. People v. Porter, No. 298474, 2013 WL 5495555 (Mich. Ct. App. Oct. 3, 2013). The Michigan Supreme Court denied leave to appeal on May 27, 2014. People v. Porter, 495 Mich. 1005 (2015). Petitioner then filed the instant petition for habeas relief, asserting the following claims:

- I. His due process rights were violated because he was improperly shackled during trial;

- II. His trial counsel was ineffective for failing to object to the shackling; and

- III. His trial counsel was ineffective because he elicited testimony about petitioner's criminal past.

### III. Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute

3

permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" Wiggins, 539 U.S. at 520-21 (citations omitted); see also Williams, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011), quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Put another way,

> Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal . . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. See Williams, 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases,

4

so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007), citing Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir. 2003); Dickens v. Jones, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV. Analysis

### A. Shackling

Petitioner first argues that he is entitled to habeas relief because he was improperly shackled during the trial. He says that because the jury had to weigh his credibility against Caldwell's testimony during trial, the shackles may have made him less credible to the one juror who testified to seeing them. Respondent says that the claim is procedurally defaulted because Petitioner's counsel did not object to the decision to shackle him. Respondent further says that the claim lacks merit because Petitioner suffered no prejudice as a result of the shackling because of the weight of the evidence against him and because he testified to the fact that he was imprisoned during the trial.

Petitioner says that that his trial counsel was ineffective for failing to object to the shackling, thus excusing any default. Ineffective assistance of counsel may establish cause for procedural default if it is "so ineffective as to violate the Federal Constitution." Edwards v. Carpenter, 529 U.S. 446, 451 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claim, it is better to consider the merits of the claim. Moreover, Petitioner could not have procedurally defaulted his ineffective assistance of counsel claim because the Michigan Court of Appeals explicitly ruled on that claim. Porter, 2013 WL 549555. Thus, the Court will consider Petitioner's claim on the merits.

The Constitution prohibits the use of visible shackles during the guilt or penalty phases of a trial "unless that use is 'justified by an essential state interest'—such as the interest in courtroom security—specific to the defendant on trial." Deck v. Missouri, 544 U.S. 622, 624 (2005) (quoting Holbrook v. Flynn, 475 U.S. 560, 568-569 (1986)). In the instant matter, after explaining that Petitioner "failed to preserve the issue because he did not object to the trial court's decision to shackle him at trial," the Michigan Court of Appeals described the shackling issue as follows:

> Here, defendant wore leg shackles at trial, but his legs were covered by the desk at which he sat. He was brought into the courtroom before the jury was seated in order to prevent jurors from inadvertently seeing his shackles. Nevertheless, one of the jurors in the case testified at an evidentiary hearing that he observed defendant's shackles a "couple times" during the trial. At the evidentiary hearing, the trial court judge sat in the seat where the juror sat during trial and looked at defendant, who was seated where he had been seated at trial, and noted on the record that it could not see defendant's shackles. The trial court concluded that the juror likely did not see defendant's shackles, and that the juror's recollection of shackles was likely influenced by being asked whether he remembered seeing shackles at trial. The trial court also concluded that because defendant's shackles were not visible, it did not need to provide a justification for shackling defendant.

6

Porter, 2012 WL 5233606 at *1. The Michigan Court of Appeals went on to conclude that the trial court "abused its discretion in having defendant shackled during trial without record evidence that the same was necessary," but that there was no evidence that Petitioner suffered any prejudice as the result of the shackling. Id.

Petitioner asserts that the court of appeals applied the wrong standard when analyzing this issue, and should have required the state to demonstrate beyond a reasonable doubt that the shackling error did not contribute to the verdict. It is well settled that:

> [W]here a court, without adequate justification, orders the defendant to wear shackles *that will be seen by the jury*, the defendant need not demonstrate actual prejudice to make out a due process violation. The State must prove "beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained.

Deck, 544 U.S. at 635 (emphasis added) (quoting Chapman v. California, 386 U.S. 18, 24 (1967)).

Here, there is no dispute, according to the Michigan Court of Appeals, that the trial court improperly shackled Petitioner during the trial. Instead, the issue is whether the trial court ordered Petitioner to wear shackles that would be seen by the jury. The Court of Appeals concluded that it had not, and pointed to the trial court's efforts to ensure that the jury would not see the shackles, including covering the restraints under the desk at which Petitioner sat and moving him in and out of the courtroom outside of the jury's presence.

Further, although one juror testified during a post-trial evidentiary hearing to having seen the shackles, the trial court ultimately concluded that the juror had misremembered, perhaps due to the fact that the trial occurred two years before the

7

evidentiary hearing. The Court of Appeals did not err in deferring to the trial court's evidentiary findings on this issue. The question asked on habeas review is not whether this Court would have come to the same conclusion as the trial court, but rather if the reviewing state court's decisions "have resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The trial court at the evidentiary hearing was in the best position to make credibility determinations regarding the testimony of the juror, and deference must be given to the trial judge's conclusions. 28 U.S.C. § 2254(e)(1); see also Patton v. Yount, 467 U.S. 1025, 1038 (1984) ("[T]he trial court's resolution of such [credibility] questions is entitled, even on direct appeal, to special deference."); Earhart v. Konteh, 589 F.3d 337, 349 (6th Cir. 2009) ("This finding of fact by the state court is binding upon us unless [the petitioner] can show it is clearly erroneous.").

Because the court of appeals' factual finding that Petitioner's shackles were not visible to the jury is not unreasonable based on the record, Petitioner is not entitled to relief. See Mendoza v. Berghuis, 544 F.3d 650, 654 (6th Cir. 2008). Even assuming that one juror saw the shackles twice during the trial, there is no evidence that Petitioner was prejudiced as a result, as the court of appeals correctly concluded. See U.S. v. Crane, 499 F.2d 1385, 1389 (6th Cir. 1974). Notably, the juror who testified at the evidentiary hearing was not asked whether his view of the shackles influenced his ultimate conclusion that Petitioner should be convicted. Additionally, the evidence against Petitioner was strong and Petitioner himself testified to the fact that he was imprisoned at the time of the trial. The alleged error, therefore, could not have had a

8

"substantial and injurious effect or influence" on the jury's verdict and was harmless. Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

Most significantly, the state court decisions concluding that Petitioner's due process rights were not violated by the brief and inadvertent viewing of his shackles was neither an unreasonable determination of the facts nor contrary to or an unreasonable application of Supreme Court law. Petitioner is not entitled to habeas relief on this claim.

### B. Ineffective Assistance of Counsel

Petitioner next argues that his trial counsel was ineffective in two ways: (1) by failing to object to his shackling during trial and (2) by asking prejudicial questions on direct examination. Respondent says that the Michigan Court of Appeals' holding that Petitioner received effective assistance of trial counsel was reasonable.

To establish that he or she received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687 (1984). Petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." Id. at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687.

To satisfy the prejudice prong, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

9

undermine confidence in the outcome." Id. at 694. The Court's review of counsel's performance must be "highly deferential." Id. at 689. Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by Strickland. Knowles v. Mirzayance, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." Id. at 123 (internal quotation omitted).

### 1. Failure to Object to Shackling

Here, the Michigan Court of Appeals held that trial counsel's failure to object to the shackling "constituted deficient, objectively unreasonable, performance," but ultimately concluded that the error "did not render the trial fundamentally unfair or unreliable" and that the result would not have been different but for counsel's poor performance. Porter, 2013 WL 5495555 at *1. The Court of Appeals reasoned that there was no evidence that Petitioner's leg shackles influenced the jury in any way and there was compelling evidence of Petitioner's guilt.

The Court of Appeals did not act unreasonably in rejecting Petitioner's claim that his attorney was ineffective for failing to object to his shackling. As addressed above, Petitioner has not presented sufficient evidence showing that his shackling amounted to a constitutional violation. The shackles were covered by a desk and the trial court made sure to move Petitioner outside of the jury's view. Although one juror testified two years later to having seen the shackles, he did not testify that viewing the shackles influenced

his decision in any way. As such, Petitioner cannot satisfy the prejudice prong of the analysis and habeas relief is unavailable on this claim.

## 2. Eliciting Unfavorable Testimony

Petitioner also says that trial counsel was ineffective because he elicited unfavorable testimony regarding Petitioner's criminal past on direct examination. Specifically, Petitioner asserts that the following testimony unfairly presented evidence that would not have otherwise been admissible:

> Q. Where do you currently stay?
> A. In Jackson.
> Q. Where in Jackson?
> A. G. Robert Correctional Facility.
> Q. Is that a prison?
> A. Yes.

(ECF No. 5-9 at 88, ¶¶ 2-7.)

> Q. You lived most of your adult life in the drug world?
> A. Yes.
> Q. That's a dangerous business, isn't it
> A. Yes.
> Q. When you first started dealing drugs, did you carry a gun?
> A. Yes, I did.
> Q. You carry - - do you carry a gun now?
> A. No, I do not.
> Q. Why not?
> A. Because I know everybody I deal with.
> Q. What do you mean by that?
> A. I've got like a history with all my customers.

(ECF No. 5-9 at 89, ¶¶ 11-23.)

> Q. You also have a criminal history, right?
> A. Yes, I do.
> Q. Mostly for drugs?
> A. Yes.
> Q. What is your criminal history?
> A. I have two cocaine possession, wanting to deliver; two weapons charges, one is attempted carrying a concealed weapon and failure to register a safety inspect handgun; and I have a marijuana case

11

| | |
|---|---|
| | that I have - - I caught with marijuana in prison; and I have a resisting, obstructing; and I have a fleeing and eluding. |
| Q. | You actually got caught with a joint in prison? |
| A. | Yes. |
| Q. | Last year? |
| A. | Yes. |
| Q. | So you still have a drug problem? |
| A. | Yes, I do. |
| Q. | The weapons charges, when did that - - those occur? |
| A. | Sometime like in - - over ten years ago in the 90s. |
| Q. | You don't remember exactly? |
| A. | No, I do not. |
| Q. | And all of those - - you were convicted of all of those crimes, correct? |
| A. | Yes. |
| Q. | And when I say convicted did you plea or did you - - did you plead guilty or did you go to trial. |
| A. | I pled. Owned up to them. |
| Q. | To all of them? |
| A. | Yes. |
| Q. | And you did time in prison? |
| A. | Yes. |
| Q. | In jail? |
| A. | Yes. |
| Q. | You still had your drug problem? |
| A. | Yes. |

(DE 5-9 at 98, ¶¶ 21-25, 93, ¶¶ 1-95, 94, ¶¶ 1-6.)

The Michigan Court of Appeals analyzed the issue as follows:

Defendant next contends that his trial counsel was ineffective for asking him at the outset of his testimony whether he used drugs or was a drug dealer. Defendant cannot overcome the presumption that his trial counsel's conduct constituted reasonable trial strategy because we defer to trial counsel's decision whether to reveal damaging information. Moreover, Caldwell had already testified that defendant used drugs and was a drug dealer. Thus, the jury was already exposed to this information, and we defer to trial counsel's decision to confront this damaging evidence.

Defendant also alleges that his trial counsel was ineffective for asking him whether he previously pleaded guilty to several drug and weapons offenses, as well as offenses for resisting and obstructing and fleeing and eluding. Defendant responded to trial counsel's questions about the offenses in the affirmative, and stated that he "[o]wned up" to his previous offenses by pleading guilty to all of them. Counsel may have had strategic reasons for

12

> doing so, because if defendant "owned up" to his prior offenses, the jury could have inferred, based on the fact that he did not "own up" to the charges for which he was on trial, that he was innocent. Again, we find that defendant fails to overcome the strong presumption that trial counsel's tactics were the product of reasonable trial strategy. Defendant is not entitled to relief merely because this strategy proved unsuccessful. Further, defendant stipulated that he was a convicted felon before his testimony began; thus, the jury was already exposed to the fact that defendant had at least one prior conviction. Evidence of defendant's prior convictions was thus cumulative, at least to some extent. And, even if trial counsel's performance fell below an objective standard of reasonableness, in light of the fact that the evidence against him was compelling, defendant is not entitled to relief because he cannot demonstrate prejudice.

Porter, 2012 WL 5233606 at *4 (internal quotations and citations omitted).

The Michigan Court of Appeal's analysis and conclusion on this issue was not unreasonable. A review of the trial transcript demonstrates that the disputed testimony is a small portion that seems to set the stage for his later testimony, namely that he was intoxicated in Caldwell's car while she murdered Gibson. It is reasonable to surmise that trial counsel made the decision to elicit the testimony relating to his drug problem because Petitioner asserts that he was "loaded" at the time of the murder, from drinking, smoking marijuana, and taking ecstasy pills, which caused him to remember very little. (ECF No. 5-9 at 115, ¶ 19.) Further, Petitioner's criminal history helps to explain why he was nervous when he saw police on the night of the murder. See Cullen v. Pinholster, 563 U.S. 170, 196 (2011) (the reviewing court is "required not simply to give the attorneys the benefit of the doubt, but to affirmatively entertain the range of possible reasons [counsel] may have had for proceeding as they did." (internal quotations omitted)). In sum, trial counsel's decision to elicit this testimony appears to be a trial strategy, there is no indication that trial counsel was ineffective, and the Michigan Court of Appeals' dispensation of this matter was reasonable.

13

## V. Conclusion

For the reasons stated above, the Court concludes that the state courts' factual findings and conclusions of law were neither unreasonable nor contrary to Supreme Court precedent. Indeed, this is a case where adherence to the standard of review compels the conclusion that habeas relief is not warranted. As such, the petition is **DENIED.**

Further, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted.[1] Therefore, a certificate of appealability is also **DENIED**.

SO ORDERED.

                                              S/Avern Cohn
                                              AVERN COHN
                                              UNITED STATES DISTRICT JUDGE

Dated: December 5, 2017
       Detroit, Michigan

---

[1] Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2).